
# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| DR. TIMOTHY MEYER, | Case no. |
| Plaintiff, | Hon. |
| v. | |
| RAYMOND D. COTTON and NELSON MULLINS RILEY & SCARBOROUGH, LLP, Jointly and severally, | |
| Defendants. | |

**GASIOREK, MORGAN, GRECO, McCAULEY & KOTZIAN, P.C.**
By:   **DAVID F. GRECO (P53523)**
*PRO HAC VICE TO BE FILED*
Attorneys for Plaintiff
30500 Northwestern Highway, Suite 425
Farmington Hills, MI 48334
(248) 865-0001; (248) 865-0002 (Fax)
dgreco@gmgmklaw.com

*Local Counsel:*
**HOYER LAW GROUP, PLLC**
BY:   DAVID SCHER
Attorneys for Plaintiff
13001 Street NW, Ste 400E
Washington, DC 20002
(202) 975-4994
dave@hoyerlawgroup.com

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, DR. TIMOTHY MEYER, by and through his attorneys, HOYER LAW GROUP, PLLC, and for his Complaint against the above-named Defendants, states as follows:

## PARTIES

1. Plaintiff, DR. TIMOTHY MEYER, resides in the City of Bloomfield Hills, Oakland County, Michigan 48302.

2. Defendant, NELSON, MULLINS, RILEY & SCARBOROUGH, LLP ("NELSON MULLINS"), is a law firm with an office located at 101 Constitution Avenue, NW, Suite 900, Washington, D.C. 20001.

3. Defendant, RAYMOND D. COTTON ("COTTON"), was/is at all times relevant herein, an attorney employed with Defendant, NELSON MULLINS, at its offices located in Washington, D.C.

## JURISDICTION AND VENUE

4. The amount in controversy, excluding any costs, attorney fees or interest, exceeds Seventy-Five Thousand ($75,000) Dollars and is otherwise within the jurisdiction of this Honorable Court. 28 USC §1332.

5. Venue is proper in this Honorable Court for the reason that the Defendants reside and do business in Washington, D.C.  28 USC § 1391.

## COUNT I
## LEGAL MALPRACTICE

6. In January 2012, Plaintiff was hired to serve as Chancellor, or Chief Executive Officer, for Oakland Community College ("OCC"), a 2-year community college located in Oakland County, Michigan.

7. Plaintiff was employed pursuant to an Employment Contract ("Contract") with OCC that was executed on January 19, 2012, and effective as of January 1, 2012.  A copy of the Contract is attached hereto as **Exhibit A.**

8. The Defendant, COTTON, served as Plaintiff's attorney for the purpose of negotiating and drafting the terms of the Contract.

9. On or about May 16, 2017, following a meeting of the OCC Board of Trustees, Plaintiff was informed that his Contract had been terminated by a two-third majority vote of the Board.

10. At the same time, a letter was hand-delivered to Plaintiff that indicated he was being placed on paid administrative leave pending further notification from the Board.

11. The procedure and process used by OCC to terminate Plaintiff's employment was in violation of Michigan's Open Meetings Act, MCL §15.261 et. seq.

12. More specifically, Michigan's Open Meetings Act generally requires meetings, deliberations, and decisions of a "public body" to be open to the public. OCC's Board of Trustees, constitutes a "public body" under the Act. OCC's Board improperly discussed, deliberated, made the decision and/or voted to terminate Plaintiff's employment during a closed session at the meeting on May 16, 2017, in violation of the Open Meetings Act.

13. On or about May 17, 2017, the Defendants were retained by Plaintiff in connection with his termination of employment as Chancellor/Chief Executive Officer of OCC.

14. On or about May 22, 2017, Plaintiff received a second letter from OCC entitled "Notice of Termination of Chancellor Employment Contract," that stated *inter alia* that "[t]he Board approved the termination of the Contract on May 16, 2017, upon a two-thirds majority vote of the full Board." A copy of this letter is attached as **Exhibit B**.

15. The second letter from OCC **(Exhibit B)** also informed Plaintiff that the termination was effective July 6, 2017, and that it was "without just cause".

16. In Section 7.C. of the Contract, it provides that "[i]n the event of termination of the Chancellor by the Board without Just Cause, the Chancellor shall receive severance compensation provided in Section 8 [of the Contract]" and that "he may elect to assume active faculty duties pursuant to Section 4(H) [of the Contract]". (**Exhibit A**)

17. Section 4.H. of the Contract provides as follows:

> **H.   Post-Chancellor Faculty Appointment.** Unless the Chancellor has been terminated by the College for Just Cause pursuant to Section 7, or as the result of his death or disability, at the conclusion of his service as Chancellor of the College and at his election, **Dr. Meyer shall be appointed as a faculty member of the College.** Dr. Meyer shall have the equivalent level of seniority accorded to a faculty member who commenced employment with the College on January 23, 2008. Dr. Meyer may elect this option only if a curriculum relevant to the current OCC academic program for which he is qualified exists. **Dr. Meyer must provide written notice to the Board by no later than thirty (30) days from the effective date of the termination of his employment as Chancellor of his intent to perform duties as a faculty member.** If he elects this option, Dr. Meyer shall be paid at the highest salary grade of the College for a faculty position. Any severance that Dr. Meyer may receive as provided in this Contract shall be reduced by any compensation he receives from his faculty position during the period in which he receives such severance payments. Dr. Meyer's faculty position shall be governed by the College's rules for faculty members, including those providing for termination, and the applicable collective bargaining agreement, and not by this Contract. [Emphasis added.]

18. The "notice" provisions of the Contract set forth in Section 13, provide as follows:

> **13.   Notices.** Any and all notices, consents, or any other communication required or permitted to be given under this Contract shall be in writing and shall be deemed to have been duly given when (i) delivered personally, (ii) mailed by registered or certified mail, return receipt requested, or (iii) sent by nationally recognized overnight courier, with proof of delivery requested and charges prepaid, to, in the case of the College, to the Chairperson of the Board at the registered address of the College, and, in the case of the Chancellor, the Chancellor's residential address as reflected in the College records at the time of notice, unless notice of a change of address is furnished to all parties in the manner provided in this Section.

19. Given that Plaintiff's termination of employment from OCC was effective as of July 6, 2017, he had until August 5, 2017, to provide proper written notice in accordance with the terms of the Contract to OCC to elect to be appointed as a faculty member.

4

20. Defendants were informed repeatedly by the Plaintiff that he wanted to exercise his option to be appointed as a faculty member of OCC.

21. Defendants were informed repeatedly by OCC's attorneys that with regard to the benefits and opportunities provided under the Contract, including the faculty appointment, that OCC would be requiring strict compliance with the terms and conditions of the Contract, including the notice provisions and time deadlines.

22. Defendants failed to provide proper notice to OCC and its counsel of Plaintiff's intention and desire to be appointed to a faculty position at OCC within 30 days of the date of his termination.

23. Defendants failed to advise Plaintiff that if he did not provide proper notice to OCC of his intention and desire to be appointed to a faculty position at OCC by August 5, 2017, that he would be estopped from doing so in the future.

24. On August 10, 2017, the Defendants were informed by OCC attorneys that Plaintiff had not properly and timely exercised his option to elect a position as a faculty member at OCC and was therefore, estopped from doing so.

25. As a result of the Defendants actions (and/or inactions), the Plaintiff lost his entitlement to a faculty position that was expressly provided for in the Contract and was/is of substantial economic value.

26. Michigan's Open Meetings Act requires that a violation of the act be brought "within 60 days after the approved minutes are made available to the public by the public body". MCL §15.270(3)(a).

27. The minutes for the OCC Board of Trustee's May 16, 2017 meeting were signed or available on or about June 21, 2017.

28. Thus, in order for a Court to have jurisdiction to invalidate the decision made at the meeting, Plaintiff, by and through his attorneys, would have had to file a complaint against OCC within 60 days of June 21, 2017, or by August 20, 2017.

29. Defendants failed to advise Plaintiff that if he did not file a claim for violations of the Open Meeting Act before August 20, 2017, he would lose his right to challenge the validity of the actions taken by OCC to terminate the Contract during the Board meeting on May 16, 2017.

30. Defendants failed to pursue or file an action for OCC's violations of the Open Meetings on before August 20, 2017, thereby causing Plaintiff to lose his rights to challenge OCC's termination decision pursuant to that Act.

31. Defendants actively represented Plaintiff with regard to his termination of employment and the issues involved therein from May 2017 through December 2017.

32. Plaintiff ultimately retained other counsel to pursue his claims arising out of his termination of employment (and the Contract) with no success, due to the negligence of the Defendants in their representation of Plaintiff concerning his termination of employment and his rights under the Contract.

33. As a result of Defendants' malpractice and negligence, as indicated above, Plaintiff lost his ability to obtain the severance benefits, and more specifically, the OCC faculty position, that he was entitled to pursuant to the terms of the Contract.

34. At all relevant times, an attorney-client relationship existed between the Plaintiff and the Defendants.

35. Pursuant to that attorney-client relationship, the Defendants owed Plaintiff a duty of care.

36. That duty included zealous representation, faith and loyalty, and services in accord with the standards of practice in the community.

37. The Plaintiff legitimately reposed faith, confidence, reliance, and trust in the Defendants.

38. The Defendants, at all relevant times, held themselves out to be competent and experienced in the field of law, and as practicing law in accordance with the applicable standards relating thereto.

39. The Defendants had certain legal duties with regard to their representation of Plaintiff and had certain legal duties to comply with the court rules, applicable statutes, and codes of professional responsibility in their representation of Plaintiff regarding the issues involved in his termination of employment from OCC. Such duties included, but were not limited to, the following:

    a. The duty to act competently;

    b. The duty not to neglect the legal matter entrusted to them;

    c. The duty to exercise independent professional judgment on Plaintiff's behalf;

    d. The duty to adequately and properly advise and represent Plaintiff in regard to the issues involved in his termination of employment from OCC including, but not limited to, timely filing any necessary litigation and complying with all of the terms, conditions, notice requirements, and time-deadlines set forth in the Contract between Plaintiff and OCC;

    e. To otherwise adequately advise Plaintiff with respect to all of the matters and issues involved regarding his termination of employment and his rights and benefits set forth in the Contract between Plaintiff and OCC; and

    f. Other acts and/or omissions that may become known during discovery.

40. The Defendants breached the aforementioned duties including, but not limited to, failing to timely file litigation pursuant to violations of Michigan's Open Meetings Act and failing

to comply with the notice provisions and time deadlines of the Contract, and/or failing otherwise to comply with the standards for practicing law in the District of Columbia.

41. As a direct and proximate result of the Defendants' legal malpractice and professional negligence, the Plaintiff has suffered damages including, but not limited to, the loss of past and future compensation and benefits related to the rights, benefits, and privileges that he was entitled to pursuant to the Contract with OCC, and mental and emotional distress and anxiety.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against the Defendants, jointly and severally, in whatever amount is shown to be established by the proofs in this cause, together with interest, cost, and reasonable attorney fees.

**DEMAND FOR TRIAL BY JURY IS HEREBY MADE**

Dated:  August 3, 2020                                    Respectfully submitted,

/s/*David Scher*
**DAVID L. SCHER**
Attorneys for Plaintiff
**HOYER LAW GROUP, PLLC**
1300 I Street NW, Suite 400E
Washington, DC  20002
(202) 975-4994
dave@hoyerlawgroup.com

*Local Counsel*

**DAVID F. GRECO (P53523)**
Attorneys for Plaintiff
*(PRO HAC VICE TO BE FILED)*
**GASIOREK, MORGAN, GRECO, McCAULEY & KOTZIAN, P.C.**
30500 Northwestern Highway, Suite 425
Farmington Hills, MI 48334
(248) 865-0001; (248) 865-0002 (Fax)
dgreco@gmgmklaw.com